Donald JOHNSTONE, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Civil Action No. 95–5714.

United States District Court, E.D. Pennsylvania.

Nov. 3, 1997.

### OPINION

LOUIS H. POLLAK, District Judge.

Before the court is *pro se* litigant Donald Johnstone's amended complaint. Plaintiff Johnstone, a former federal inmate, filed his original complaint in September of 1995. By order dated September 29, 1995, this court granted Johnstone leave to proceed *in forma pauperis* and dismissed his complaint while granting leave to file an amended complaint within thirty days. On October 27, 1995, Johnstone filed an amended complaint attempting to correct the infirmities in his original complaint. This memorandum will address whether Johnstone can proceed on the claims in his amended complaint.

Reading the amended complaint liberally, it appears to assert two types of claims: (1) claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging denial of medical treatment at various federal correctional institutions and the Greater Philadelphia Center for Community Corrections (referred to in the amended complaint as the "Greater Philadelphia Correctional Center"), to which Johnstone was assigned for completion of his sentence, and (2) a claim for judicial review of a determination under the federal Inmate Accident Compensation regime established in 18 U.S.C. § 4126 *et seq.* For the reasons set forth below, plaintiff's civil rights claims will be dismissed, and only his workers' compensation claim may go forward.

### Discussion

#### A. Applicable Law

The Prison Litigation Reform Act (PLRA), which Congress passed in 1996, has amended the *in forma pauperis* statute in ways relevant to the decision in this case. These amendments have expanded the grounds upon which a trial court may dismiss a complaint *sua sponte*, even before the summons issues. Formerly, 28 U.S.C. § 1915(d) allowed a court to dismiss a complaint only if it found that the allegation of poverty was untrue or if it was "satisfied that the action is frivolous or malicious." As the Supreme Court held in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), the "frivolous" standard does not draw all actions dismissible upon Rule 12(b)(6) grounds within its ambit. As amended in 1996, however, § 1915 directs the court to dismiss a case at any time if it appears that the action "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

As a preliminary matter, it is necessary to determine whether these 1996 amendments apply to Johnstone's amended complaint, which was filed in 1995. In *Keener v. Pennsylvania Bd. of Probation & Parole*, 128 F.3d 143 (3d Cir.1997), the Third Circuit has recently joined those circuits holding that the 'three strikes' provision of § 1915(g)[1] is applicable to actions filed before passage of the amendments. *See, e.g., Green v. Nottingham*, 90 F.3d 415 (10th Cir.1996); *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir.1996). Because these decisions deal with a different subsection of the statute, resolution of the retroactivity issue with respect to § 1915(e)(2)(B) is warranted.

The question of whether a statute will be applied to litigation pending on the date of enactment is determined under the test the Supreme Court articulated in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed. 2d 229 (1994). Under *Landgraf*, if Congress has not prescribed the temporal compass of a statute's application, the court is required to determine whether application to events preceding passage "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect

---

**1.** This provision allows a court to deny *in forma pauperis* status to a prisoner who, on three or more occasions, filed an action in a federal court that was dismissed as frivolous.

to transactions already completed." *Id.* at 280, 114 S.Ct. at 1505. It is only when such consequences would ensue that *Landgraf* operates to preclude application of a new statute to pending litigation. *Id.*

As the Court noted in *Landgraf*, "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity.... Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id.* at 275, 114 S.Ct. at 1502. This is true even if the change operates to the detriment of a party to the litigation. *Id.*

■ It is apparent that the 1996 amendments to the *in forma pauperis* statute, as they relate to this case, effectuate a rule change that does not impair any right that Johnstone possessed before enactment, and that does not increase liability or impose a new duty. The 1996 amendments simply direct a trial court to consider certain issues on the court's own initiative rather than await a motion to dismiss, as was the practice before the amendments. Accordingly, in line with *Keener* and the other cases applying § 1915(g) to litigation initiated prior to the amendments, I conclude that § 1915(e)(2)(B) effectuates a change which has no deleterious substantive consequences for Johnstone and hence applies to pending litigation. I turn now to the question whether Johnstone's claims can go forward under § 1915 as amended.

### B. Johnstone's Claims

#### 1. *Bivens Claims against the United States and Various Federal Agencies*

■ Johnstone's amended complaint purports to bring constitutional claims under the aegis of *Bivens* against the United States and several federal agencies. *Bivens* actions, however, may only be maintained against federal officers; sovereign immunity bars such actions against the United States or agencies thereof. *F.D.I.C. v. Meyer*, 510 U.S. 471, 485–86, 114 S.Ct. 996, 1005–1006, 127 L.Ed.2d 308 (1994). Consequently, Johnstone's claims against the United States, the Justice Department, the Bureau of Prisons, the Bureau of Prison Industries, Inc., UNICOR, and the Department of Health Services of the Bureau of Prisons will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

#### 2. *Bivens Claims against Steve Schwalb*

Johnstone's amended complaint names as a defendant the Director of Federal Prison Industries, Steve Schwalb. Although the amended complaint is not entirely clear, it appears to include Schwalb as a defendant with respect to constitutional claims as well as the plaintiff's workers' compensation claims (which are discussed below in section B.5). To the extent that the amended complaint may be read to assert civil rights claims against Schwalb, Johnstone's action may not go forward for the reasons given below.

■ Reading the amended complaint liberally and assuming all allegations are true, there is no indication that Schwalb had any personal involvement in the alleged constitutional deprivations. On the contrary, the allegations of the complaint relate to a specific work assignment in a correctional facility in Texas, and the denial of medical assistance at various federal prisons in Texas, Connecticut, and Pennsylvania. Hence, no inference can be raised, consistent with Johnstone's amended complaint, that Schwalb had any involvement with the actions of which Johnstone complains. Therefore, the only basis for a *Bivens* claim against Schwalb would be a rather remote form of vicarious liability.

■ Although the Third Circuit has not ruled on the availability of vicarious liability in *Bivens* actions, see *Young v. Quinlan*, 960 F.2d 351 (3d Cir.1992) (declining to reach the issue), the circuits that have addressed the issue are unanimous in holding that *Bivens* does not authorize suits predicated on a *respondeat superior* theory. *See, e.g., Simpkins v. District of Columbia Government*, 108 F.3d 366 (D.C.Cir.1997); *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35 (8th Cir.1995); *Abella v. Rubino*, 63 F.3d 1063 (11th Cir.1995); *Del Raine v. Williford*,

32 F.3d 1024 (7th Cir.1994); *Abate v. Southern Pacific Transp. Co.,* 993 F.2d 107 (5th Cir.1993); *Terrell v. Brewer,* 935 F.2d 1015 (9th Cir.1991); *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981). The reasoning of these cases is, in my judgment, compelling.

As the Eleventh Circuit pointed out in *Abella,* the law of *Bivens* actions has closely tracked developments in the law governing civil rights actions under § 1983. 63 F.3d at 1065. Thus *Bivens* actions are governed by the same limitations principles, see *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985), and the same immunity principles, see *Butz v. Economou,* 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978). Since *respondeat superior* plays no role in § 1983 actions, the Eleventh Circuit concluded that *Bivens* actions should follow suit. *Abella,* 63 F.3d at 1065. The Fifth Circuit has reasoned in the same fashion with the same result. In *Dean v. Gladney,* 621 F.2d 1331 (5th Cir.1980), in holding that *Bivens* claims sounding in *respondeat superior* were not available against federal officials, the court put the matter as follows: "The effect of *Bivens* was, in essence to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials." *Id.* at 1336. Given the correspondence, in effect and purpose, between *Bivens* actions and § 1983 actions, and the coeval development of *Bivens* principles thus far, this court joins those authorities holding that *Bivens* does not authorize suits based on vicarious liability.

Johnstone has alleged no personal involvement on Schwalb's part in the events upon which the suit is maintained and no inference of such involvement can be reasonably drawn from the allegations of the amended complaint. Consequently, Johnstone cannot prove any set of facts, consistent with his amended complaint, that would entitle him to relief against Schwalb under *Bivens,* and these claims will therefore be dismissed. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### 3. Bivens Claims Against Prison Health Officers

Johnstone also brings *Bivens* claims against named and unnamed doctors and health officers at five different federal prisons (Fort Worth, Danbury, Fairton, Loretto, and Ashland) and against a counselor at the Greater Philadelphia Center for Community Corrections.[2] The amended complaint alleges that Johnstone was denied adequate medical treatment in violation of his constitutional rights. Although the amended complaint mentions only the Fourteenth Amendment by name, the court will construe the complaint liberally, see *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), assuming that it alleges violations of the Eighth Amendment (the only potentially viable avenue for relief).

In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court articulated the requirements for stating an Eighth Amendment claim relating to medical care in prison. To state a claim for denial of adequate medical assistance, the complaint must allege "deliberate indifference to serious medical needs of prisoners." *Id.* at 104, 97 S.Ct. at 290. The Court elaborated, stating that not every claim of inadequate treatment would suffice: "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. at 292. Thus the requirement is two-fold. The allegations must indicate: (1) a culpable state of mind on the part of the officials, *viz.,* deliberate indifference, and (2) a serious medical need. *See West v. Keve,* 571 F.2d 158, 161 (3d Cir.1978). In Johnstone's case it will not be necessary to address the seriousness of the medical need alleged, since Johnstone's allegations do not satisfy the first requirement.

Johnstone alleges that at all of the institutions mentioned above he was denied adequate medical treatment for a groin injury sustained while on a work assignment at Fort Worth. Like the plaintiff in *Estelle,* Johnstone does not allege that any of the

2. For the purposes of this inquiry, the court will assume without deciding that this counselor may properly be deemed a federal official amenable to suit under *Bivens*.

facilities denied treatment altogether; rather, he complains of the treatment he did receive. It appears that Johnstone was given heart medication for his heart condition and pain medication for his groin injury. The amended complaint further makes plain that Johnstone was also allowed to see a private urologist. Thus there is nothing in the amended complaint that would support even the most slender inference of deliberate indifference. *See Estelle,* 429 U.S. at 105–06, 97 S.Ct. at 291–292; *see also Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980) (stating that "mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment"), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed. 2d 239 (1981). Accordingly Johnstone's Eighth Amendment medical maltreatment claims against individual defendants at five federal prisons and at the Greater Philadelphia Center for Community Corrections will be dismissed.

### 4. Bivens Claim Against Corrections Officer Mehrta and Unnamed Fort Worth Safety Officer

Johnstone's claims against Corrections Officer Mehrta and an unnamed prison safety officer are not grounded upon a denial of medical care, but rather concern Mehrta's actions in giving Johnstone a particular work assignment. The complaint alleges the following: Johnstone arrived at the Fort Worth prison with medical records indicating that he should only be assigned light-duty work because of a heart condition. The complaint further alleges that Mehrta, in disregard of this condition, nonetheless assigned Johnstone to a heavy-duty work assignment, the performance of which led to his injuries. Like the medical maltreatment claims discussed above, this claim will be treated as one arising under the Eighth Amendment. In contrast to the medical maltreatment allegations, however, these allegations are not facially inconsistent with the state of mind requirement that forms the predicate for an Eighth Amendment claim.[3] However, it appears that these allegations suffer from a different, and equally fatal, infirmity.

From the face of the amended complaint, it is clear that Johnstone's action is untimely with respect to defendant Mehrta. Johnstone initiated this action on September 28, 1995, more than five years after April 16, 1990, the date of the event that forms the basis of the only colorable claim Johnstone has against this defendant. The limitation period for *Bivens* actions is determined by borrowing the forum state's statute of limitations for personal injury claims. *See Wilson v. Garcia,* 471 U.S. 261, 279, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985). For civil rights cases brought in Pennsylvania courts, the applicable period is the state's two-year statute of limitations. *See Knoll v. Springfield Township Sch. Dist.,* 763 F.2d 584, 585 (3d Cir.1985); 42 Pa. Cons.Stat. Ann. § 5524(2). Since Pennsylvania law does not recognize imprisonment as a disability, and the record does not implicate any other potential tolling doctrine, there is no ground to toll the running of the statute. *See Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982). Nor would his claim against Mehrta for a discrete act committed in 1990 support a continuing violation theory. Thus Johnstone's claim falls well outside the statute of limitations.

It is clear that the Third Circuit accepts that dismissal under Rule 12(b)(6) on limitations grounds is appropriate when the complaint, as here, facially shows noncompliance with the applicable limitations period. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994). It is also clear that the PLRA makes 12(b)(6) grounds available to a district court at any time, and indeed seems to make dismissal on such grounds mandatory. *See* 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss the case at any time if the court deter-

---

**3.** In *Wilson v. Seiter,* 501 U.S. 294, 302, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991), the Court held that the "deliberate indifference" standard first articulated with regard to medical claims in *Estelle* governs all Eighth Amendment claims.

Giving Johnstone the benefit of every favorable inference, the allegation that Mehrta disregarded his medical restriction, therefore, clears this hurdle.

mines that . . . (B) the action or appeal . . . (iii) fails to state a claim on which relief may be granted"). However, *sua sponte* dismissal on this ground raises concerns of procedural fairness. The statute of limitations is an affirmative defense ordinarily subject to waiver. Moreover, while a motion would put plaintiff on notice of the defense and provide an opportunity to respond, *sua sponte* dismissal does not ordinarily provide either. Thus, a discussion of the propriety of the court issuing such a dismissal on its own initiative and before service of process is in order.

This circuit has not yet had the opportunity to speak to this issue since the PLRA expanded the grounds upon which a district court can rule before service of process, but a Second Circuit case decided shortly before passage of the amendments to the *in forma pauperis* statute is instructive. In *Pino v. Ryan,* 49 F.3d 51 (2d Cir.1995) (Newman, Ch. J.), the Second Circuit held, under the old *in forma pauperis* provisions, that *sua sponte* dismissal, prior to service of the *pro se* complaint on the defendants, of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory." *Id.* at 53. The more potentially controversial aspect of this decision (upholding *sua sponte*, dismissal on limitations grounds as a dismissal for frivolousness under the old § 1915(d)) has been obviated by the PLRA amendments. However, the court's discussion—regarding the propriety of dismissal at the threshold of litigation on the basis of an affirmative defense—raises issues that merit careful consideration.

The *Pino* court noted that the Second Circuit has often "urged district judges to use caution in deciding whether to dismiss [*pro se*] complaints prior to service upon defendants and the filing of a motion or answer." *Id.* at 52. Such caution is well-advised. The volume of *pro se* prisoners' claims carries with it the temptation to find short-cuts for their disposition, and the legal process suffers if even claims that are ultimately found meritless are cut off short of

the process that all claims are due. As the panel in *Pino* noted, however, "caution need not lead to paralysis." *Id.* at 53. The court noted that the Supreme Court's decision in *Neitzke* suggested that there is nothing particularly special about affirmative defenses that would make them inappropriate for resolution before service of process in *pro se* cases. One of the two examples given in *Neitzke* of cases appropriate for dismissal at the threshold was sovereign immunity, 490 U.S. at 327, 109 S.Ct. at 1832, which is indisputably an affirmative defense.

With regard to the statute of limitations defense, the *Pino* court pointed out that reservations about *sua sponte* dismissal are confined to those situations where the court identifies and acts upon the issue after the suit has passed the point at which the issue should have been raised, thus raising concerns about fairness to a plaintiff who has invested time and expense in litigation. 49 F.3d at 53. Here, as was the case in *Pino,* any such concerns over sunk costs do not obtain. Furthermore, the *Pino* court pointed out that a dismissal under § 1915 was "especially appropriate" because the action was filed five years after the events in question. *Id.* In the present case, Johnstone filed his complaint five years after the date in question as well.[4]

■ Given the cogent analysis of these issues in *Pino*—a case decided under the more plaintiff-protecting requirements of the old § 1915(d)—and given the further fact that Congress in the PLRA has directed courts to dismiss at any time for failure to state a claim, nothing counsels against dismissal on limitations grounds in this case. When a complaint on its face shows that the action was filed outside of the applicable limitations period, and the court has satisfied itself that no legal rule tolls or otherwise abrogates the limitations period, *sua sponte* dismissal is appropriate under § 1915. Accordingly, plaintiff's claims against Mehrta

---

4. It should also be noted that New York's personal injury limitation period is three years, while Pennsylvania's is two years. Thus Johnstone's filing is even more acutely untimely than was Pino's.

and the unnamed Fort Worth safety officer will be dismissed.[5]

### 5. Johnstone's Workers' Compensation Claim

Johnstone also alleges that he was wrongfully denied medical expenses and compensation under the Inmate Accident Compensation Act, 18 U.S.C. § 1426. This statute provides workers' compensation benefits as the exclusive remedy for federal prisoners who incur work-related injuries. *United States v. Demko,* 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Judicial review is available for final action on inmate compensation claims under the Administrative Procedure Act. *See Thompson v. United States Federal Prison Industries,* 492 F.2d 1082 (5th Cir.1974); 5 U.S.C. §§ 701–06. Johnstone alleges that he timely filed his workers' compensation claim and that the claim was ultimately denied by the chief operating officer on June 1, 1995. Accordingly, Johnstone's request for judicial review states a claim for which relief may be granted, and is neither frivolous nor asserted against defendants who are immune. Therefore, as to the request for review of the Inmate Accident Compensation Act claims only, Johnstone's complaint may go forward against the appropriate defendants. Finally, Johnstone's request for appointment of counsel will be denied.

---

**5.** If any additional facts would suggest (1) that the statute should be deemed tolled or (2) that any alleged wrongful activity occurred within the limitations period, plaintiff has the opportunity to allege those in motion for reconsideration.