**Patricia A. FIELDS, Plaintiff,**

v.

**J.C. BLAKE, Captain; Bernard Schaffer; Horsham Township Police Department; John Clark and Department of the Navy, Defendants.**

**Civil Action No. 03–2150.**

United States District Court, E.D. Pennsylvania.

Dec. 20, 2004.

Patricia A. Fields, Philadelphia, PA, pro se.

Joan K. Garner, U.S. Attorney's Office, Philadelphia, PA, Joseph J. Santarone, Jr., Marshall Dennehey Warner Coleman & Goggin, Norristown, PA, for Defendants.

## *ORDER AND MEMORANDUM*

### *ORDER*

DUBOIS, District Judge.

**AND NOW,** this 20th day of December, 2004, upon consideration of Federal Defendants'[1] Motion to Dismiss Plaintiff's Second Amended and Amended Second Amended Complaint, or in the alternative, for Summary Judgment (Doc. No. 41, filed 5/7/04), *pro se* plaintiff's Response to Defendants' Motion of 7 May 04 (Doc. No. 45, filed 5/14/04 filed), and the related submissions of the parties, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Federal Defendants' Motion to Dismiss Plaintiff's Second Amended and Amended Second Amended Complaint, or in the alternative, for Summary Judgment is **DENIED IN PART AND GRANTED IN PART,** as follows:

(1) Federal Defendants' Motion to Dismiss Plaintiff's Second Amended and Amended Second Amended Complaint is **DENIED** on the ground that the parties presented evidence beyond the Second Amended Complaint and Amended Second Amended Complaint; and,

(2) Federal Defendants' Motion for Summary Judgment is **GRANTED.**

---

1. The federal defendants are J.C. Blake, Captain, and John Clark, Petty Officer.

**IT IS FURTHER ORDERED** that the caption of the case is **AMENDED** so as to remove the federal defendants, Captain J.C. Blake and Petty Officer John Clark, as defendants. Because the United States was substituted for the Department of the Navy as a defendant and thereafter *pro se* plaintiff's claims against the United States were dismissed without prejudice to plaintiff's right to present her claims to an appropriate agency, the Department of the Navy, within 60 days by Order dated January 21, 2004, the caption of the case is further **AMENDED** so as to remove the Department of the Navy and the United States as defendants.

**IT IS FURTHER ORDERED** that, with respect to the remaining defendants, a Preliminary Pretrial Conference will be scheduled in due course.

### MEMORANDUM

Presently before the Court is Federal Defendants' (Captain J.C. Blake and Petty Officer John Clark)[2] Motion to Dismiss Plaintiff's Second Amended and Amended Second Amended Complaint, or in the Alternative, for Summary Judgment. As the parties to this action have submitted evidence beyond the complaints, the Court will deny the Motion to Dismiss. For the reasons set forth below, the Motion for Summary Judgment is granted.

## I. BACKGROUND

### A. *Procedural History*

Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* on April 3, 2003, which was denied without prejudice

on April 15, 2003. An Amended Motion to Proceed *In Forma Pauperis* was filed on May 1, 2003. By Order dated May 8, 2003, the Court granted the Amended Motion to Proceed *In Forma Pauperis* but dismissed plaintiff's claims against the defendants named in the original Complaint and the Amended Complaint, the Department of the Navy and Captain Blake in his official capacity, on sovereign immunity grounds.

By Order dated January 21, 2004, plaintiff's Motion to Add Parties was granted, and the Horsham Township Police Department, Sergeant Bernard Schaffer, and Petty Officer John Clark were added as defendants. The Court directed plaintiff to file a second amended complaint against all defendants, which would supercede plaintiff's initial Complaint, Amended Complaint, and her letters to the Court including, but not limited to, the letters of September 18, 2003, November 5, 2003, and January 7, 2004.

In addition, the Court vacated its May 8, 2003 Order dismissing the Department of the Navy and reinstated the Navy as a party to the action on the ground that, although not specifically plead, plaintiff's allegations raised issues under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674.[3] Because the proper defendant in an action under the FTCA is the United States, not the Department of the Navy, the United States was substituted for the Navy as a defendant pursuant to Fed. R.Civ.P. 15(c). The Court then dismissed plaintiff's claims against the United States without prejudice on the ground that plain-

---

**2.** The Department of the Navy, for which the United States was substituted, was originally a party to this action and was dismissed without prejudice pending plaintiff's exhaustion of administrative remedies as required by the Federal Tort Claims Act. *See* 28 U.S.C. § 2675.

**3.** Sovereign immunity, the basis for dismissing the action against the Department of the Navy on May 8, 2003, is not a defense under the FTCA.

tiff had not exhausted her administrative remedies pursuant to 28 U.S.C. § 2675.

Before deciding the pending motion, the Court issued an Order on November 12, 2004, giving plaintiff a final opportunity to present any additional evidence to the Court on or before December 3, 2004. Plaintiff responded to the Order by letter dated December 13, 2004. Although plaintiff missed the December 3rd deadline, the Court will nevertheless consider all statements contained in plaintiff's December 13, 2004 letter as evidence in deciding this motion. Furthermore, the Court will treat all allegations in the Second Amended Complaint and Amended Second Amended Complaint (hereinafter collectively, "Second Amended Complaints") against Captain Blake and Petty Officer Clark as evidence.

## B. *Factual History*

This action arises out of events that took place on April 17, 2001, when plaintiff, Patricia A. Fields, and her daughter were lodged at the Bachelor's Enlisted Quarters ("BEQ") at the Naval Air Station Joint Reserve Base Willow Grove, Pennsylvania ("NAS Willow Grove"). On that day, the BEQ manager informed the base legal officer at NAS Willow Grove, Petty Officer John Clark ("Petty Officer Clark"), that plaintiff had an outstanding bill for lodging and dining at the base facilities and a $300 bill which she had not paid from the previous year. According to plaintiff, she had never been to NAS Willow Grove before April 17, 2001, and was a victim of mistaken identity.

After receiving the report of unpaid bills, Petty Officer Clark asked to speak with plaintiff about the matter. Plaintiff went to Petty Officer Clark's office and, according to moving defendants, became agitated and evasive. Plaintiff's behavior led Petty Officer Clark to request a criminal background check on plaintiff from the Horsham Township Police Department. In response, Petty Officer Clark was told by the Horsham Township police that there was an outstanding arrest warrant for plaintiff and that they were en route to arrest her.

The Horsham Township police arrived at NAS Willow Grove, arrested plaintiff, and searched her. During the search and arrest, plaintiff alleges that she was physically and verbally assaulted. After the arrest, Petty Officer Clark briefed Captain J.C. Blake ("Captain Blake"), the Commanding Officer of NAS Willow Grove, on the situation. Captain Blake thereafter signed and distributed a letter to the base administrator and law enforcement agencies with jurisdiction on the base barring plaintiff from NAS Willow Grove.

On February 3rd and February 9th, 2004, Plaintiff submitted the Second Amended Complaints[4] against the Department of the Navy, Captain Blake, Petty Officer Clark, the Horsham Township Police Department, and Sergeant Bernard Schaffer, head of Criminal Investigations Division of the Horsham Township Police Department, claiming that her civil rights were violated when she was escorted off NAS Willow Grove with a "forged warrant," and allegedly drugged, verbally and physically assaulted, searched, convicted, and imprisoned.[5]

With respect to Captain Blake, Fields alleges that her rights were violated when Captain Blake wrote and distributed a letter to the Horsham Township Police

---

**4.** The Second Amended Complaints were docketed on February 17, 2004.

**5.** Plaintiff's Second Amended Complaints and subsequent submissions to the Court refer to the April 17, 2001 events as a "kidnaping."

Department and Navy personnel which barred her from reentering the base. Fields also claims that Petty Officer Clark "ran around and [spread] false information" about her and her daughter and involved the Horsham Township Police Department in a "military problem." Plaintiff's allegations with respect to Petty Officer Clark's actions after the Horsham Township police arrived is conflicting. In her Second Amended Complaints, she states that when the police arrived, Petty Officer Clark "vanished." In the submission received by the Court on December 12, 2004, plaintiff states that Petty Officer Clark "stated he witnessed the abusive activity" of the police.

## II. STANDARD OF REVIEW—SUM-MARY JUDGMENT

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment should be granted. Fed.R.Civ.P. 56(c). The Supreme Court describes the summary judgment determination as "the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis

for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987).

"[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The nonmoving party, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982). When the movant files a properly supported motion for summary judgment, the burden shifts to the nonmoving party to prove "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

Plaintiff does not identify the legal theory on which she is proceeding. Because plaintiff is appearing *pro se*, the Court, reading plaintiff's pleadings liberally, will construe the Second Amended Complaints as purporting to assert civil rights and defamation claims against Captain Blake and Petty Officer Clark.[6] A civil rights

---

**6.** *Pro se* plaintiff alleges a violation of her Fourth Amendment rights and violation of her due process rights under the Fourteenth

Amendment. The Court will assume that plaintiff intended to allege a violation of due process rights under the Fifth Amendment.

action against a federal employee may be asserted under the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics.*[7] 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* creates a cause of action where a federal official, acting under color of federal law, violates a plaintiff's constitutional rights. *Id.*

## A. Statute of Limitations

■ The statute of limitations in a Bivens action is that of the most analogous state law cause of action. In Pennsylvania, torts have a two year statute of limitations, and defamation has a one year statute of limitations. 47 Pa. Cons.Stat. § 5524. With respect to the defamation claims, defendants argue that the statute of limitations has expired.

■ Fields' cause of action accrued on April 17, 2001, the date she knew of or had reason to know of the alleged injuries. *See Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982). Fields filed her initial motion to proceed *in forma pauperis* and submitted her original Complaint on April 3, 2003, almost two years later. As those documents were filed after the expiration of the one year statute of limitations for defamation claims, plaintiff's defamation claims are time-barred.

With respect to the tort claims, defendants argue that Fields failed to commence her action within the two-year statute of limitations period. Defendants cite *Richardson v. Diagnostic Rehab. Center,* 836 F.Supp. 252 (E.D.Pa.1993), for the proposition that the statute of limitations

is tolled while the court considers an *in forma pauperis* motion, but the limitations period restarts if the court denies the motion. Defendants argue that applying this rule to plaintiff, she was required to file her complaint by April 29, 2003, and she was two days late.

■ However, *Richardson* also holds that the limitations period may be equitably tolled if the plaintiff complies with a court order regarding refiling of an *in forma pauperis* motion. *Richardson,* 836 F.Supp. at 255. In the this case, the Order dated April 11, 2003 gave plaintiff the right to refile her amended *in forma pauperis* motion on or before May 2, 2003. Plaintiff filed an amended *in forma pauperis* motion on May 1, 2003. Under these circumstances, the Court will equitably toll the limitations period as of April 3, 2003. Thus, the tort claims, other than the defamation claim, were timely filed. *Id.*

## B. Relation Back under F.R.C.P. 15(c)

■ Defendants argue that plaintiff's Second Amended Complaints adding Petty Officer Clark as a defendant do not relate back to the original Complaint and that all claims against him are therefore barred by the statute of limitations. Plaintiff can only avoid the limitations bar if the Second Amended Complaints relate back to the date the original Complaint is deemed to have been filed pursuant to Fed.R.Civ.P. 15(c).

■ Rule 15(c) of the Federal Rules of Civil Procedure permits amendments of a

---

*See* ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES, 523 (2d ed. 2002) ("The Fifth and Fourteenth Amendment, respectively, provide that neither the United States nor State governments shall deprive any person of 'life, liberty, or property without due process of law.' ")

7. *Bivens*-type suits are the federal counterpart of 42 U.S.C. § 1983. See *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 800 (3d Cir.2001).

pleading to relate back to the date of the original pleading when:

 (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or[8]

 (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

 (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[9]

Because Fields' Second Amended Complaints add new parties, subparagraph (3) of the Rule is applicable. In order for Fields' claims against Petty Officer Clark to relate back to the original Complaint, all of the conditions in Rule 15(c)(3) must be satisfied, as follows: (1) The claim against the newly named defendants must have arisen "out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." (2) The newly named party must have "received such notice of the institution of the action [within the 120 day period] that the party will not be prejudiced in maintaining a

defense on the merits." The Third Circuit has interpreted the second condition as imposing two requirements, notice and absence of prejudice, each of which must be satisfied. (3) The newly named party must have known, or should have known [within the 120 day period] that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir.2001).

As to the first requirement, there is no question that the claims asserted against Petty Officer Clark arose out of the same transaction or occurrence as those alleged in the original Complaint. The substance of the allegations at issue are based upon the events that took place at NAS Willow Grove on April 17, 2001. Accordingly, the first requirement is satisfied.

■ As to the second requirement, the 'prejudice' element to which the Rule 15(c)(3)(A) refers "is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." *Curry v. Johns–Manville Corp.*, 93 F.R.D. 623, 626 (E.D.Pa.1982); *see also Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989). Because Fields' Second Amended Complaints allege injuries arising from the same incident described in the original Complaint, the evidence relevant to a defense for the claims against Petty Officer Clark is essentially the same as the evidence relevant to a defense against the original claims. *Nelson v. County of Allegheny*, 60 F.3d

---

**8.** Subparagraph (1) is not applicable because Pennsylvania courts do not take a more lenient approach to the relation back doctrine than do federal courts. *See Aivazoglou v. Drever Furnaces*, 418 Pa.Super. 111, 613 A.2d 595, 599 (1992).

**9.** This requirement must have been fulfilled within the 120–day period following the filing of the original complaint. *See Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

1010, 1015 (3d. Cir.1995). Furthermore, Petty Officer Clark's counsel had access to all evidence in a timely fashion as his counsel also represents Captain Blake, one of the original defendants. Therefore, the Court concludes that Petty Officer Clark will not be prejudiced in defending this action if the Court rules that the Second Amended Complaints relate back to the date on which the original Complaint was deemed to be filed.

■ Rule 15(c) also requires that the plaintiff demonstrate that the new parties received notice of the institution of the action. Fed.R.Civ.P. 15(c)(3)(A). The notice requirement of Rule 15(c) is fulfilled if the defendant is aware that the action was commenced and had reason to expect his potential involvement in the action. *See Singletary v. Pa. Dep't of Corr.*, 266 F.3d at 195; *see also, Lundy v. Adamar of New Jersey Inc. v. Carlino*, 34 F.3d 1173, 1189 (3d Cir.1994); *Lockwood v. City of Philadelphia*, 205 F.R.D. 448, 451 (E.D.Pa.2002) ("Rule 15(c) does not require actual service of process on the newly named defendant to satisfy the notice requirement"); *Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir.1986) (notice need not be formal); *Eakins v. Reed*, 710 F.2d 184, 187–88 (4th Cir.1983) (same); *Kirk v. Cronvich*, 629 F.2d 404, 407–08 (5th Cir.1980) (same); *Swartz v. Gold Dust Casino, Inc.*, 91 F.R.D. 543, 547 (D.Nev.1981) (same).

Defendants do not dispute that Petty Officer Clark was aware of the action within the 120 day period. In fact, Petty Officer Clark provided a declaration on August 8, 2003, for use in defending the suit against Captain Blake which demonstrates his early awareness of this action. Therefore, the Court concludes that Petty Officer Clark's knowledge of the commencement of the litigation within 120 days after the filing of the original Complaint is suffi-

cient notice within the meaning of Rule 15(c)(3)(A).

The final requirement of Rule 15(c) is that the newly named party knew or should have known within 120 days after the filing of plaintiff's complaint that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. Fed.R.Civ.P. 15(c)(3)(B). Defendants argue that this requirement has not been met.

■ While the text of Rule 15(c) suggests that the mistake element only applies to misnamed or misdescribed parties, "the Rule is widely-understood to allow the addition of new parties that were never originally named or described." *Wine v. EMSA Ltd. P'ship.*, 167 F.R.D. 34, 38 n. 7 (E.D.Pa.1996) (quoting *Heinly v. Queen*, 146 F.R.D. 102, 107 (E.D.Pa.1993)); *Trant v. Towamencin Township*, 1999 WL 317032 (E.D.Pa. May 20, 1999); *Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.*, 801 F.Supp. 1450, 1457 (E.D.Pa.1992). The mistake requirement "is intended to insure that the new defendant knew or should have known that failure to join was not simply a legal strategy, but that his joinder was a distinct possibility." *Trant v. Towamencin*, 1999 WL 317032, at *21; *Advanced Power*, 801 F.Supp. at 1457 ("The mistake condition … is concerned fundamentally with the new party's awareness that failure to join it was error rather than a deliberate strategy."). For this reason, "courts have typically resisted a narrow reading of the mistake element and allowed the addition of responsible individual defendants when plaintiff simply made an error in legal judgment or form in suing only the corporation." *Advanced Power*, 801 F.Supp. at 1457.

Plaintiff's failure to add Petty Officer Clark as a defendant in her *pro se* Complaint would probably not have occurred if she had the assistance of a lawyer. *See*

*Taliferro v. Costello* 467 F.Supp. 33 (E.D.Pa.1979) (amended complaint related back to original complaint where the failure to name the defendant as party was probably due to plaintiff acting *pro se* ). Thus, the Court cannot conclude that plaintiff made a deliberate or tactical decision not to sue Petty Officer Clark. *See Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1183 (3d Cir.1994); *compare Great Northeastern Lumber & Millwork Corp. v. Pepsi–Cola Metropolitan Bottling Co., Inc.*, 785 F.Supp. 514, 516 (E.D.Pa. 1992) (manufacturer of component part in product liability action "may have believed plaintiff made a deliberate choice rather than a 'mistake' in deciding not to join [it]"). Moreover, because of Petty Officer Clark's close relationship with Captain Blake, a named defendant in the original Complaint, he should have known that but for an error in legal judgment, he would have been named in the Complaint, particularly in view of the fact that the text of the Complaint described conduct attributable to him. *See Advanced Power*, 801 F.Supp. at 1457. Additionally, the declaration provided by Petty Officer Clark on August 8, 2003, describing his personal involvement in the event about which Fields complained, "shows his recognition that the suit should have been brought against him." *Eakins v. Reed*, 710 F.2d 184, 188 (4th Cir.1983). Thus, the final condition of Rule 15(c) is satisfied.

The Court therefore concludes that all the requirements of Rule 15(c) are met.[10] Accordingly, plaintiff's Second Amended Complaints joining Petty Officer Clark as a defendant relate back, for purposes of the statute of limitations, to the date on which the original Complaint is deemed to have been filed.

### C. Qualified Immunity

Federal Defendants argue that they are entitled to qualified immunity and that plaintiff's claims against them should be dismissed on this ground. Under the qualified immunity doctrine, "[o]fficials exercising discretionary powers are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *D.R., v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1368 (3d Cir.1992) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir.1997). "When a defendant asserts the affirmative defense of qualified immunity, however, the court must determine as a threshold matter whether the defendant is entitled to that defense." *D.R.*, 972 F.2d at 1367–68 (citing *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727).

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court emphasized that district courts should address qualified immunity "at the earliest possible stage in litigation." *Id.* at 201, 121 S.Ct. 2151. The Court

---

**10.** The Court recognizes that the issue of whether the requirements of Rule 15(c)(3)(B) are met is a close one. Most courts within this circuit take the position that the mistake requirement of the Rule applies to situations where the defendant was misdescribed or misnamed and where the real names of "John Does" are substituted in the amended complaint. *See, e.g., Singletary*, 266 F.3d at 200–03; *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir.1977); *Overton v. Southeastern Pennsylvania Transp. Auth.*, 2004 WL 1243666, 2004 U.S. Dist. LEXIS 10329 (E.D.Pa. June 4, 2004); *Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.*, 801 F.Supp. 1450 (E.D.Pa.1992). In this case, because plaintiff's mistake was attributable to an error in legal judgment, the Court will address the other issues raised in defendants' Motion.

further stated that the requisites of a qualified immunity defense must be considered in proper sequence. *Id.* at 200, 121 S.Ct. 2151. First, courts must address the following "threshold" question: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.*

The Supreme Court has explained that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. Therefore, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*

 Reading the Second Amended Complaints liberally and assuming all statements in plaintiff's related submissions are true, the Court concludes that plaintiff has failed to establish that Captain Blake and Petty Officer Clark violated her constitutional rights. There is no suggestion in the Second Amended Complaints or related submissions that federal defendants had any direct contact or personal involvement in the alleged constitutional deprivations. Fields does not allege that Captain Blake or Petty Officer Clark participated in the search or arrest by the Horsham Township Police Department. The fact that she states that Petty Officer Clark "stated that he witnessed the abu-

sive activity" is insufficient to establish a constitutional claim.

 Courts in this district and other circuits have consistently held that a Bivens action cannot be predicated on a theory of respondeat superior or vicarious liability. *Johnstone v. United States,* 980 F.Supp. 148, 151–52 (E.D.Pa.1997); *Simpkins v. District of Columbia Government,* 108 F.3d 366 (D.C.Cir.1997); *Rosenberg v. Crandell,* 56 F.3d 35 (8th Cir.1995); *Abella v. Rubino,* 63 F.3d 1063 (11th Cir.1995); *Del Raine v. Williford,* 32 F.3d 1024 (7th Cir.1994); *Abate v. Southern Pacific Transp. Co.,* 993 F.2d 107 (5th Cir.1993); *Terrell v. Brewer,* 935 F.2d 1015 (9th Cir. 1991); *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981). Therefore, to the extent that Fields' seeks to hold Captain Blake and Petty Officer Clark vicariously liable for any actions taken by NAS Willow Grove personnel or the Horsham Township Police Department, the Court concludes that no relief can be granted.

 Captain Blake's only action with respect to Fields involved issuing a letter barring her from NAS Willow Grove. Civilians have no constitutional right to enter a military base. *See Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). The commanding officer of a military base has wide discretion as to whom he can exclude from the base. *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 893, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). It is well recognized that a that a base commander can summarily bar civilians from a military establishment and is not required to afford notice and a hearing prior to barring a civilian from the base. *Serrano Medina v. United States,* 709 F.2d 104, 109 (1st Cir.1983) (finding that district court did not err in finding "no protected interest" by civilians' summary debarment from military base, stating that "the power to exclude civilians summarily

has been acknowledged by almost every court to consider the matter"); *Tokar v. Hearne,* 699 F.2d 753, 756 (5th Cir.1983); *United States v. Gourley,* 502 F.2d 785, 786–87 (10th Cir.1973).

Captain Blake states in his declaration that he signed the Ejectment Order barring Fields from NAS Willow Grove based on the following information: plaintiff had been eating and dining at the BEQ without paying; plaintiff had a $300.00 unpaid bill from a previous stay at the BEQ; a Pennsylvania court had issued a warrant for plaintiff's arrest for theft; and plaintiff resisted arrest when the Horsham Township Police were taking her into custody. These reasons are well within the Captain's broad authority to "summarily exclude civilians from the area of his command." *Cafeteria & Restaurant Workers,* 367 U.S. at 893, 81 S.Ct. 1743. Even if the information given to Captain Blake regarding Fields' outstanding bill and arrest warrant were ultimately shown to be false, it was objectively reasonable for him to rely on this information and issue the Ejectment Order. *See Rogers v. Powell,* 120 F.3d 446, 455 (3d Cir.1997) (holding that the actions of an officer in reliance on what proves to be the flawed conclusions of a fellow officer may be reasonable nonetheless and thus protected by the doctrine of qualified immunity).

There is no evidence of a constitutional violation by Captain Blake. Accordingly, he is entitled to qualified immunity. *Bennett v. Murphy,* 274 F.3d 133, 136 (3d Cir.2002) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end and the officer is entitled to immunity.").

■ With respect to Petty Officer Clark, plaintiff alleges that he violated an alleged military regulation by requesting that plaintiff discuss her outstanding bill with him, exhibited incompetence in handling an official military problem, spread false information about plaintiff and her daughter, and involved the Horsham Township Police Department in a "military problem." Plaintiff makes one additional allegation in her letter to the Court on December 12, 2004, that Petty Officer Clark "stated he witnessed the abusive activity" of the Horsham Township police.

Accepting all of plaintiffs allegations as true, plaintiff has not established a constitutional violation. In light of all the circumstances surrounding the event, it was reasonable for Petty Officer Clark to rely upon the information received from the Horsham Township Police Department and to question plaintiff on the basis of such information. *See Capone v. Marinelli,* 868 F.2d 102 (3d Cir.1989). With respect to plaintiff's allegation that Petty Officer Clark "stated he witnessed the abusive activity," it is significant that Petty Officer Clark is not a law enforcement officer and that, at the time of the alleged "abusive activity," plaintiff was in the custody of the Horsham Township police. Under those circumstances, and because Petty Officer Clark had no special relationship with plaintiff at that time, he had no duty to intervene to protect the constitutional rights of plaintiff. *See Lundy v. Adamar of New Jersey,* 34 F.3d 1173, 1200 (3d Cir.1994) (no duty to act absent a special relationship between the parties); *but see Smith v. Mensinger,* 293 F.3d 641, 650–51 (3d Cir.2002) (stating that police officers and law enforcement officials have an affirmative duty to intervene when other officers use excessive force in their presence).

■ Although the Court need not proceed with the qualified immunity inquiry because plaintiff has failed to establish a constitutional violation as to Petty Officer Clark, it will address the remaining qualified immunity issue. Once a plaintiff has

established a constitutional violation, courts evaluating a qualified immunity claim must decide whether the constitutional right was clearly established. *Id.* In other words, the court must determine whether, in the factual scenario established by the plaintiff, a reasonable officer would have understood that his actions were unlawful. *Id.* "If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to qualified immunity." *Id.* at 136–37; *see also Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

 Petty Officer Clark's affidavit states that plaintiff became evasive, nervous, and agitated when he spoke with her about her outstanding bill. This behavior led Petty Officer Clark to request a background check from the Horsham Township Police Department. Based on that background check, the police came to NAS Willow Grove to execute the arrest warrant. After the incident, Petty Officer Clark briefed Captain Blake on the event.

Petty Officer Clark acted properly in requesting a background check from the local police department and detaining plaintiff until the police arrived to execute the outstanding arrest warrant. The Horsham Township Police Department has concurrent jurisdiction on NAS Willow Grove and was authorized to enforce the arrest warrant on the base. *See* 74 P.S. § 3. For these reasons, the Court concludes that a reasonable officer in the position of Petty Officer Clark would not have understood these actions—asking Fields' to discuss her outstanding bill with him, requesting a background check following Fields' suspicious behavior, and reporting the incident to Captain Blake—to be unlawful. The same analysis is applicable to the fact that Petty Officer Clark did not attempt to interfere with the Horsham Township police after they arrested plaintiff—a reasonable person in the position of Petty Officer Clark would not have concluded that his failure to act under all the circumstances violated clearly established law. In reaching this conclusion, the Court notes that even accepting plaintiff's allegations that this was a case of mistaken identity and that the arrest warrant was erroneous, it would not be clear to a reasonable officer that any of these actions were unlawful in the situation that Petty Officer Clark confronted. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

## IV. CONCLUSION

For all of the forgoing reasons, the Court concludes that Captain Blake and Petty Officer Clark are entitled to qualified immunity. Accordingly, the Federal Defendants' Motion for Summary Judgment is granted on that ground.